UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV8

| | |
|---|---|
| DORIANA VLADIMIROVA FARIS ) <br> individually and as Administratrix of the ) <br> ESTATE OF ASHLEY ALEXANDER ) <br> FARIS, ) <br>              Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CLEAR CHANNEL COMM. INC., ) <br> AND SFX ENTERTAINMENT, INC., ) <br> d/b/a CLEAR CHANNEL ) <br> ENTERTAINMENT ) <br>              Defendants. ) <br> ) | ORDER AND MEMORANDUM |

This civil action arises out of the accidental death of Plaintiff Doriana Faris's husband, Ashley Faris, who was tragically electrocuted at Verizon Wireless Amphitheater. Plaintiff Faris, proceeding on her own behalf and on behalf of the estate of her late husband, asserts claims under North Carolina law for wrongful death, punitive damages, and negligent and intentional infliction of emotional distress against Defendants SFX Entertainment, Inc., and its parent company, Clear Channel Communications, Inc. The plaintiff filed her action in the Superior Court of Mecklenberg County, North Carolina on April 8, 2004, and the defendants removed the action to this Court based on diversity of the parties, pursuant to 28 U.S.C. § 1332. (Doc. No. 1). The plaintiff filed an Amended Complaint in this Court on November 3, 2004. (Doc. No. 46).

Presently before the Court are Defendant Clear Channel's motion to be dismissed from the lawsuit (Doc. No. 47), and the defendants' joint motions for summary judgment as to the plaintiff's Second, Third, and Fourth Causes of Action (Doc. Nos. 49 and 51), all of which are granted. Also

1

before the Court is the defendants' motion to bifurcate (Doc. No. 51), which is denied as moot. The reasons for the Court's decision follow, beginning with its findings of fact.

## FINDINGS OF FACT

On June 6, 2003, Ashley and Doriana Faris and a group of friends attended a concert at the Verizon Wireless Amphitheater featuring the Red Hot Chili Peppers and Snoop Dogg. It rained throughout the concert. At one point, Ashley and his friend Travis Creech left to use the restroom. Walking barefoot down the wet south plaza stairwell, Ashley stepped on either an electrified metal stair tread or the face plate of a light fixture recessed into the stair. He was electrocuted when he touched the metal handrail, completing the circuit with the stairwell. After hearing a "falling" or "collapsing" noise, Creech turned and saw Ashley convulsing on the ground. He attempted to assist Ashley, but received electric shocks each time he touched him. Another patron, Ryan Robards, tried to assist Ashley, but Robards received an incapacitating shock where he stepped on the metal stair tread. Travis was finally able to grab Ashley around his chest, and, with the help of another patron, Hannah Stalcup-Burris, dragged Ashley to the bottom of the stairs. By this time, Ashley was unconscious. Paramedics soon arrived and took over. Travis then ran back to their group of friends and told Mrs. Faris that something had happened to Ashley. Mrs. Faris and Travis immediately returned to the stairwell. Mrs. Faris worked her way through a crowd of people surrounding Ashley. When she saw him, he was lying on a stretcher, covered by a white sheet, being placed into the back of the ambulance. She then rode in the front of the ambulance to the hospital. After she repeatedly asked the driver what was going on, she was told to calm down and say her prayers. Upon arrival at the hospital, Mrs. Faris waited in the ambulance as her husband was taken inside, and then she was brought into a waiting room were she tried to answer the nurses' questions. Eventually, the doctor came and told her that they had tried everything but could not save her husband.

ANALYSIS

Summary judgment is appropriate where the Court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). In making that determination, the Court must be certain the record does not reveal any factual disputes, resolving all ambiguities and drawing all permissible factual inferences in a light most favorable to the party against whom summary judgment is sought. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).

A.  Motion to Dismiss Defendant Clear Channel Communications, Inc.,

Mrs. Faris has alleged that Defendant Clear Channel, Inc., as the parent corporation of SFX, is liable for the acts of SFX. Clear Channel contends that it should be dismissed from this case as the plaintiff failed to allege facts establishing liability under the theories of *respondeat superior* or piercing the corporate veil. The Court agrees, and therefore grants summary judgment as to the plaintiff's claims against Clear Channel. For the reasons stated below, the Court denies the plaintiff's request to take judicial notice of Nobody in Par. Presents v. Clear Channel Communs., 311 F. Supp. 2d 1048 (D.Colo. 2004), or to reopen discovery.

    1.  Respondeat Superior

The North Carolina Supreme Court has held that "[a] principle's vicarious liability for the torts of his agent depends on the degree of control retained by the principle over the details of the work as it is being performed." Vaugh v. N.C. Dept. of Human Resources, 252 S.E.2d 792, 795 (N.C. 1997); See also Wood v. McDonald's Corporation, 603 S.E.2d 539, 545 (N.C. Ct. App. 2004). While "whether the *degree of control* rises to a level of *respondent superior* is a question of fact," Wood, 603 S.E.2d at 546-47 (internal citations omitted) (emphasis added), the Court must determine whether the plaintiff has offered evidence sufficient to establish a genuine issue of material fact as

3

to whether Clear Channel retained sufficient supervision and control over the running and operating of SFX. The Court finds that she has not.

It is undisputed that Clear Channel and SFX are legally separate companies, incorporated individually and in separate states.[1] Mrs. Faris argues the following facts demonstrate control: the two companies have used the same representative (Mr. Rogers) in this lawsuit to testify on their behalf; the executives of SFX report directly to executives of Clear Channel; Clear Channel is in possession and control of SFX's company documents; Clear Channel and SFX share identical company manuals, procedures, handbooks, etc.; and all money made by SFX flows up to Clear Channel. None of these facts, even in a light most favorable to the plaintiff, indicate detailed supervision and control, i.e., "the hiring, firing, and supervision of personnel," see Wood, 603 S.E.2d at 546-47, over the running and operating of either SFX or the Amphitheater and related events. Therefore, the Court finds that there is no genuine issue of material fact as to Mrs. Faris's claims against Defendant Clear Channel under a theory of *respondeat superior.*

    2.    Motion for Judicial Notice

Mrs. Faris requests the Court to take judicial notice of Nobody in Par. Presents v. Clear Channel Communs., 311 F. Supp. 2d 1048 (D.Colo. 2004), a Colorado antitrust case in which Clear Channel was involved. (Doc. No. 62: Memorandum). This motion will be denied.

The general rule is that the Court "will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence." Wilson v. Volkswagen of America, Inc., et al., 561 F.2d 494, 510 n.38 (4th Cir. 1977). Nobody in Par. Presents is factually distinguishable from the case at bar. First, Nobody Par. Presents involved antitrust law. The Supreme Court has held

---

[1] Clear Channel acquired SFX in the year 2000.

and the Colorado court acknowledged that parent and subsidiaries are, for antitrust purposes, a single enterprise acting with a unity of purpose. Id. at 1069; see also Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771, 104 S.Ct. 2731, 2742 (1984).  Second, Nobody in Part. Presents deals with the marketing activities of Clear Channel where the case at bar concerns the operations of an individual Ampitheatre.  The two cases address entirely different activities, and it is the control over the particular activities that lies at the heart of this case.

3. Motion to Reopen Discovery

In the alternative, Mrs. Faris requests the Court to reopen discovery for a further attempt to prove *respondeat superior*. (Doc. No. 62: Memorandum).  This motion also will be denied because, as her original complaint demonstrates, by the time Mrs. Faris filed her motion to reopen discovery, she had known for over a year that (1) the two defendants are separate and distinct entities, (2) SFX, not Clear Channel, operated the venue where the alleged negligence occurred, and (3) Clear Channel denied liability for all of to Mrs. Faris's asserted claims.

4. Piercing the Corporate Veil

The plaintiff also contends that the instant case requires that the corporate veil be pierced.[2] The North Carolina Supreme Court has developed a three prong test, also known as the "instrumentality rule," to determine whether piercing the corporate veil is appropriate.  The three elements of this test are:  (1) control by the defendant corporation over another corporation to the extent that the latter lacks its own separate identity; (2) such control must have been used by the defendant corporation to commit a fraud or wrong, or a dishonest and unjust act, in contravention

---

[2]Mrs. Faris admittedly did not allege sufficient facts or circumstances in her Amended Complaint to put the defendants on notice of a liability theory based on piercing the corporate veil.  The defendants, nonetheless, argued against the possibility (Doc. No. 48: Memorandum) and Mrs. Faris responded (Doc. No. 62: Memorandum). Accordingly, the Court will address the matter.

of the plaintiff's legal rights; and (3) the aforesaid control and breach of duty must proximately cause the injury or loss about which the plaintiff complains. Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985). The power to pierce the corporate veil should be exercised "reluctantly" and "cautiously." State of North Carolina ex rel Long v. Alexander, 711 F. Supp. 257, 264 (E.D.N.C. 1989); see also Strawbridee v. Susar Mountain Resort, 320 F. Supp. 2d 425, 438-39 (W.D.N.C. 2004). Based on its review of the record in the instant case, the Court finds that the plaintiff has failed to prove that Clear Channel exercised control over SFX sufficient to establish the first element.

In determining whether the parent company exercises such control over its subsidiary that the latter lacks its own separate identity, the North Carolina Supreme Court considers several factors, including inadequate capitalization of the "controlled" corporation, noncompliance with corporate formalities, complete domination so that the latter has no independent identity, excessive fragmentation of a single enterprise into separate corporations, non-payment of dividends, and siphoning of funds. Glenn, 329 S.E.2d at 330-31. The subsidiary must have "no separate mind, will or existence of its own." Id. at 300. Here, the evidence does not demonstrate that Clear Channel controlled the manner in which SFX operated the Amphitheatre. There is no evidence that SFX was inadequately capitalized, failed to observe corporate formalities, or that it lacked an independent identity. Because Clear Channel does not exercise excessive control over SFX, the first prong of the instrumentality test cannot be satisfied, and the Court need not examine the other prongs.[3]

B.     SFX's Motion for Summary Judgment

Defendant SFX has moved for summary judgment as to Mrs. Faris's Second, Third, and Fourth Causes of Action against SFX. The defendant also seeks to bifurcated the punitive damages

---

[3] Even assuming that Mrs. Faris could establish excessive control, she has not alleged that Clear Channel exerted such control over SFX for the purpose of committing fraud, a dishonest, unjust or any type of act that satisfies the second prong of the instrumentality test. See Id.

section of the trial. Based on the record, the Court finds the plaintiff has failed to make a sufficient showing on her claims for punitive damages, negligent infliction of emotional distress, or intentional infliction of emotional distress, and the defendant is entitled to judgment as a matter of law as to each of those claims. The motion to bifurcate therefore is moot.

    1.    Punitive Damages

Mrs. Faris argues that pursuant to N.C. Gen. Stat. § 1D and N.C. Gen. Stat. § 28A-18-2, she is entitled to recover punitive damages. To succeed on a claim for punitive damages, a plaintiff must prove (1) an aggravating factor of fraud, malice or willful or wanton conduct (2) by clear and convincing evidence. N.C. Gen. Stat. § 1D-15 (2003). The clear and convincing evidence standard is a greater burden than preponderance of the evidence, and must fully convince the trier of fact. Schenk v. HNA Holdings, Inc., 613 S.E.2d 503, 508 (N.C. Ct. App. 2005). Willful or wanton conduct is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen.Stat. § 1D-5(7) (2003). Moreover, the statute describes "willful or wanton conduct as "more egregious than gross negligence." N.C. Gen. Stat. § 1D-5(7). Furthermore, to award punitive damages against a corporation, "the officers, directors, or managers of the corporation [must have] participated in or condoned the conduct . . . ." N.C. Gen. Stat. § 1D-15(c). See also Schenk v. HNA Holdings, Inc., 613 S.E.2d 503 (N.C. Ct. App. 2005).

The issue before the Court is whether, in a light most favorable to her, Mrs. Faris has forecasted evidence from which a reasonable jury could find by clear and convincing evidence that SFX acted with wilful and wanton disregard of the rights and safety of the decedent. The Court finds that she has not.

Mrs. Faris asserts that the following facts show clear and convincing evidence of willful or wanton conduct. During a James Taylor concert on May 30, 2003 (one week prior to the death of Ashley Faris) Katherine Marshall, the Director of Event Operations with the Amphitheatre, received word that two different patrons had received electric shocks on the south plaza stairwell, and informed Kevin Lynch, Director of Facility Operations. (Doc. No. 63: Pl. Mem. at 7). Lynch immediately went to the south plaza stairwell, saw nothing, and then went to the north plaza stairwell to check them as well. He saw nothing there either, so returned to the original south plaza stairwell for another look. (Id. at 8). Upon arriving, he brushed the back of his hand across one of the light fixtures recessed into the stairwell did not receive any current. (Id. at 8). He then told his employee, Ron Jackson, to tape-off one of the light fixtures with electric tape. (Id. at 8). A few days later, Lynch spoke with Robert Miles, an electrician sub-contractor who performed all electrical work on the Amphitheatre, explained what had occurred, and discussed the fact that the particular fixture referenced by Lynch was operational, with the face plate attached. (Id. at 10). Lynch testified that he checked the particular light fixture for moisture, discerned there was none, and removed the electrical tape. (Id. at 12). He did not take further action because Miles told him "it sounds like static electricity to me." (Doc. No. 52: Ex. 2, Lynch TR 156). Miles, however, denies having said this, and testifies that Lynch turned down his offer to look at the light fixture because Lynch wanted to handle it himself and to simply let Miles know if he needed anything further. (Id. at 67-68).

The Court does not find that the above facts rise to the level of willful or wanton conduct. For example, Lynch removed the tape from the light fixture precisely because he believed it was safe. He even brushed his own hand across one of the light fixtures subjecting himself, however unusually, to the same danger Plaintiff contends constitutes wilful and wanton disregard. Although

8

additional and more prudent efforts should have been taken, the facts indicate that there was a concern for the safety of others. Numerous people were involved, numerous activities occurred concerning the light fixture, and some ineffective efforts were taken to resolve the problem.

Mrs. Faris also asserts that SFX's willful or wanton conduct is shown by a "pattern and practice of ignoring electrical hazards." Lisa Austin, General Manager of ARAMACK'S, a third party company that provides goods and beverage concessions for the Ampitheatre, testified to two different electrical problems, which were allegedly reported and yet unaddressed by SFX.[4] First, she allegedly reported a flooding problem in the small building in which she worked, requiring her to keep power cords elevated above the water. The hazard allegedly was reported to Lynch on three or four occasions, to Lynch's predecessor as Director of Facility Operations, D.J. White, and to Della Rowser. This hazard existed for over a year until after Ashley's death. Second, she allegedly reported to Lynch that flooding would cover an electric box adjacent to a walk-in cooler, but the hazard was not fixed until after Ashley's death. Lastly, Ms. Austin testified that the reason given to her from an unknown source for not fixing the electrical hazards was that they did not have enough money to fix the problems because it had to come out of capital the following year. These facts do not rise to the level of wilful or wanton conduct because there is no evidence of the severity of these allegations, no evidence of harm resulting from these hazards, nor causal connection to the electrical malfunction in the instant case. Nothing in these facts demonstrate a conscious and intentional disregard for the safety of others. Therefore, summary judgment is granted as to the plaintiff's Second Cause of Action for punitive damages. Because the Court has granted the motion for summary judgment at to the Second Cause of Action for punitive damages, the issue of bifurcation is moot.

---

[4] Ms. Austin also testified to another electrical hazard involving people receiving shocks from a hand rail and door handle leading up to a trailer, but she did not personally receive a shock, nor report this hazard to anyone.

3. Negligent Infliction of Emotional Distress ("NIED")

North Carolina has fully embraced "mental anguish" or "emotional distress" as a worthy cause of recompense.[5] To successfully "state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson, 395 S.E.2d 85, 97 (N.C. 1990).

The Court finds that the plaintiff has clearly satisfied the first and third elements. The first element is stipulated for purposes of this motion. And Mrs. Faris has offered evidence that she suffers from Major Depression Disorder and Post-Traumatic Stress Disorder, conditions within the broad definition of severe emotional distress as set forth by North Carolina courts. See Wrenn v. Byrd, 464 S.E.2d 89, 93 (N.C. Ct. App. 1995). The difficult issue resides in the second requirement.

"The touchstone for whether a plaintiff may recover for NIED is whether the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and *foreseeable* result of the defendant's negligence." Gardner v. Gardner, 435 S.E.2d 324, 327 (N.C. 1993) (internal citations omitted) (emphasis in original). The North Carolina Supreme Court has consistently repeated three factors to consider in determining foreseeability: (1) the plaintiff's proximity to the negligent act; (2) the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned; and (3) whether the plaintiff personally observed the negligent act. Johnson,

---

[5] "[Q]ue major vis est animi quam corporis, hoc sunt graviora ea quae concipiuntur animo quam illa quae corpore." "For, as the power of the mind is greater than that of the body, in the same way the sufferings of the mind are more severe than the pains of the body." M. Tullius Cicero, Orations, The Fourteen Orations Against Marcus Antonius (Philippics), 11.4, (cited by both Young v. Telegraph Co.,11 S.E. 1044, 1148-49 (N.C. 1890) and Johnson v. Ruark Obstetrics and Gynocology Associates, P.A., 395 S.E.2d 85, 90 (N.C. 1990)).

10

395 S.E.2d at 98; see Gardner, 435 S.E.2d at 327. These factors are neither requisite nor exclusive determinants of forseeability. Id.

Regarding the first and third factors, North Carolina courts have generally found foreseeability where a person observes the negligent act, but not where the plaintiff "was not physically present at the time of defendant's negligent act" and therefore "was not able to see or hear or otherwise sense the [accident] or to perceive immediately the injuries [of the victim]." Gardner, 435 S.E.2d at 328.[6] Another consideration in determining foreseeability is whether the defendants were actually aware of the plaintiff's close relationship with the victim. North Carolina courts have not found foreseeability where there is no evidence that the defendant knew of the plaintiff's relationship to the victim, and thus could not anticipate harm to the plaintiff as a consequence of the negligent act. For example, in Sorrells v. M.Y.B. Hospitality Ventures, the North Carolina supreme Court found no foreseeability where an establishment served alcohol to the plaintiffs' son before he was killed in a car accident because "it does not appear that the defendant had any actual knowledge that the plaintiffs existed . . . . [W]hile it may be natural to assume that any person is likely to have living parents or friends and that such parents or friends may suffer some measure of emotional distress if that person is severely injured or killed, those factors are not determinative on the issue of foreseeability." 435 S.E.2d 320, 323 (N.C. 1993).[7]

---

[6] Compare Johnson, 395 S.E.2d at 98 (finding foreseeability found where the plaintiff parents were in close proximity to and personally observed the defendant's actions surrounding the death of their baby and its stillbirth), with Anderson v. Baccus, 439 S.E.2d 136 (N.C. 1994) (finding no foreseeability where the plaintiff arrived at the scene of a car accident shortly after it occurred and only witnessed his pregnant wife's rescue from the wreckage).

[7] Also compare Gardner, 435 S.E.2d at 328 ("[t]here is neither allegation nor forecast of evidence that defendant knew plaintiff was subject to an emotional or mental disorder or other severe and disabling emotional or mental condition as a result of his negligence and its consequence. Absent such knowledge, such an outcome cannot be held to be reasonably foreseeable."); and Butz v. Holder, 437 S.E.2d 672, 674 (N.C. Ct. App. 1993) (finding the parents and brother of a cyclist killed through the negligence of a motorists could not establish foreseeability because "[i]t appears . . . that the Supreme Court has held that in any claim for NIED, the plaintiff must allege and through

11

The Court finds that Mrs. Faris did not witness the accident and that SFX lacked any knowledge of her existence. As in Anderson and Gardner, Mrs. Faris was never in close enough proximity to have any immediate, sensory observation of the accident or even the resuscitative efforts on the victim. She did not witness the accident, but arrived shortly afterwards. She rode in the front of the ambulance, and was kept in a separate hospital room. Although she arrived in the immediate aftermath of the accident, and surely endured great pain and anguish, she falls outside the ambit established by Gardner, Baccus, and other controlling North Carolina precedent. Moreover, the Court finds that SFX lacked sufficient knowledge of her existence. The Court is not persuaded by Mrs. Faris's argument that possession of a ticket to the concert constituted knowledge of her existence. Her reasoning is based on Johnson, which held, "a contractual relationship provides a strong factual basis to support *either* a claim for emotional distress based upon a breach of contract *or* a finding of proximate causation and foreseeability of injury sufficient to establish a tort claim for emotional distress." 395 S.E.2d at 93. This is unpersuasive for two reasons. First, a contract does not arises from the holding of a ticket, but rather from the purchasing of a ticket. North Carolina State Treasure v. City of Asheville, 300 S.E.2d 283, 285 (N.C. Ct. App. 1983) ("[b]y purchasing a ticket to the concert, the ticket holder enters into a contract with the auditorium and the performer"). Here, there is no evidence that Mrs. Faris purchased the ticket. She and her husband attended the concert with six friends, any of whom could have purchased the tickets. Thus SFX was not put on notice of her existence. Second, Mrs. Faris does not pursue her claim under a theory of emotional

---

forecast of evidence show that defendant *knew* that the plaintiff was subject to an emotional or mental disorder . . . [in order] to say that the consequences of the alleged tortfeasor's negligence were reasonably foreseeable."); with Johnson, 395 S.E.2d at 98 (court found sufficient foreseeability where the defendant doctor knew that the plaintiffs existed, that the plaintiffs were husband and wife, and that the unborn baby was their child; and Wrenn, 464 S.E.2d 89 (foreseeability found where an emergency room doctor knew the plaintiff was the patient's wife, the plaintiff witnessed her husband being treated in the emergency room, and the plaintiff watched her husband's condition deteriorate.).

distress resulting from a breach of contract. There is no proof that SFX breached any duty to Mrs. Faris. Her injuries derive from SFX's breach of duty owed to the victim. Thus, summary judgment is granted as to Mrs. Faris's Fourth Cause of Action.

      4.      Intentional Infliction of Emotional Distress ("IIED")

To prove a claim for intentional infliction of emotional distress under North Carolina law, a plaintiff must show (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress. Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C. 1981); see also Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992). "Conduct is extreme and outrageous when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Johnson v. Colonial Life & Acc. Ins. Co., 618 S.E.2d 867, 872 (N.C. Ct. App. 2005) (internal citation omitted). An IIED claim also may be satisfied where a defendant's actions indicate a reckless indifference to the probability that they will cause severe emotional distress. Dickens, 276 S.E.2d at 335.

Here, the evidence of extreme and outrageous conduct consists of a history of ignoring electrical hazards, failure to fully inspect the electrical systems, an alleged statement that maintenance of electrical hazard was not in the budget, and allegedly turning down the offer of the electrician to come look at the light fixture that caused two shocks at the previous concert. These facts, even when taken in a light most favorable to Mrs. Faris, do not constitute conduct that is so egregious as to go "beyond all possible bounds of decency, and to be regarded as atrocious." Johnson, 618 S.E.2d at 872. Therefore, even if SFX's actions indicate a reckless indifference to the probability of causing another severe emotional distress, a reasonable jury could not return a verdict in favor of Mrs. Faris on her IIED claim because there is no evidence of extreme and outrageous conduct. Summary judgment therefore is granted as to her Third Cause of Action.

CONCLUSION

After assessing the evidence in a light most favorable to Mrs. Faris, the Court finds that she has not produced sufficient evidence to withstand the defendants' motions for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Clear Channel's Motion for Summary Judgment (Doc. No. 47) is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE** in its entirety.

2. Defendant SFX's Motions for Summary Judgment (Doc. Nos. 49 and 51) are **GRANTED**, and Plaintiff's Second, Third, and Fourth Causes of Action are **DISMISSED WITH PREJUDICE**.

3. Defendant SFX's Motion to Bifurcate the trials into separate phases regarding liability for punitive and for compensatory damages (Doc. No. 53) is **DENIED AS MOOT**.

Signed: September 1, 2006

Robert J. Conrad, Jr.
Chief United States District Judge